Scofield, J.,
delivered the opinion of the court:
This case was originally referred to the court by the Committee on Military Affairs of the House of Representatives, under the provisions of the Act of March 3, 3883 (22 Stat. L., 485), known as the Bowman Act. But the claimant subsequently filed a petition under the general jurisdiction of the court to recover pay as a retired officer of the Army, at the rate of $2,100 a year, from December 31, 3865, to the time of filing his petition, or so much thereof as the court, under the statute of limitations, might be authorized to consider.
The claimant was an officer of the regular Army of the United States, on the active list, from July 1,1842, to September 17, 1863, at which time, having the rank of captain and assistant quartermaster, he was placed upon the retired list.
February 6, 1865, he reported to the Quartermaster-General that “his health and strength were entirely restored, and that he was ready to resume his active duties if the public service required it.” On the 22d of March following he was ordered to proceed to Denver, Colo., and relieve Captain Gorton, and on May 25, I860, he reported his arrival at that place.
September 26,1865, he tendered_his resignation in the Army, which, November 20, 1865, was accepted by the President, to take effect December 31, 1865. Thereupon his name was dropped from the Army Register, and he received no pay after that date.
*328 He now contends that his resignation related ouly to active service and not to his position on the retired list, and that its acceptance left him still a “ captain in the U. S. Army, retired,” entitled to retired pay. As this contention is based upon the form of resignation and acceptance, they are here inserted entire:
“Chief Quartermaster’s Office,
“ District of the Plains,
“ Denver, C. T., September 26th, 1865.
“ General L. Thojias,

“Adjt. Gen. U. S. Army, Washington Güy, D. G.:

“I have the honor to tender, hereby and by these presents, my resignation from the Army of the United States, to take effect immediate and unoonditionaV “ Respectfully,
“P. T. Turnley,
“ Captain and Asst. Qr. Master,
“U. S. Army, Graduate of 1846.”
“Adjutant-General’s Office,
“ Washington, Nov. 20,1865.
“ Captain P. T. Turnley,
“ TJ. 8. Army, Denver Oity, Colorado Territory :
“ Sir : Your resignation has been accepted by the President of the United States, to take effect the thirty-first day of December, 1865, on condition that you receive no final payments until you shall have satisfied the Pay Department that you are not indebted to the United States.
“ I am, sir, very respectfully, your obedient servant,
“ S. F. Chalfin,

“Asst. Adjt. Geni?

It is admitted that the proper designationof this officer while on the active list or while performing active duties was “ captain and assistant quartermaster U. S. Army,” and when on the retired list and not on active duty was “ captain U. S. Army, retired.” It will be seen that the claimant signs his resignation as “captain and assistant quartermaster, U. S. Army, graduate of 1846,” and the notice of the President’s acceptance is addressed to him as “captain U. S. Army.”
We do not think that the title which the claimant appended to his name in signing his resignation operated as a limitation upon the clear and unambiguous words of the resignation itself. “Resignation from the Army of the United States, im *329 mediate and unconditional,” could mean nothing less than an entire severance of his Army connection. The claimant himself seems to have so understood it at the time, for in a few days after he wrote General Upton, his superior officer, that he had tendered his “ resignation fromU. S. Army,” and requested leave of absence. October 24, 1865, in a communication to General Pope, inclosing his resignation, he calls it “my resignation from the Army of the United States,” and asks for leave of absence. His request for leave and his resignation passed through the same channels on their way to Washington, and the leave was finally granted and the resignation accepted on the same day. In sending forward this resignation and request for leave General Upton makes this indorsement:
“ Captain Tarnley informs me that he intended so resign when in Utah in 1860, but the war soon after breaking out, he was induced to delay till such time as he could retire without prejudice to the service. For important private reasons, which Capt. Turnley has made known to me, I respectfully recommend that his resignation be accepted and that leave of absence be granted him till his accounts are settled.”
General Dodge, through whose hands the resignation and request for leave passed, indorsed on the recommendation “for reasons stated to me in person by Captain Turnley, I approve his resignation.” General Meigs forwarded his resignation and request for leave with 'the following recommendation :
“ Captain Turnley has written to me in regard to the condition of his father’s estate in East Tennessee, where his father was lately threatened with death, an aged man, and I presume that he is now so desirous of leaving the service that it would be better to let him go. His knowledge of affairs on the plains was useful to the Department, and his integrity inspired its confidence.
“ I recommend that his resignation be accepted to date from the 31st of December next, and that he have a leave of absence until that time to enable him to settle his ac-eounts.”
In all this correspondence there is no intimation that the claimant understood that he was simply resigning from active service. Leave of absence was sufficient for that purpose. It is hardly possible that an officer of his education and experience in the Army could have understood that the language of his resignation, so many times repeated, meant *330 anything less than a total severance from the Army. Certainly, he must have so understood the President’s acceptance, for pay ceased at that date; it does not appear, however, that he then expressed surprise or made any protest. The first notice of discontent appearing in the record is his application for restoration, made about thirteen years afterward.
It is further said that the claimant, at the date of his resignation, was not in his right mind, and that the paper is therefore void. It is true that he was much out of health, debilitated, and depressed in mind and body, but it appears that he was attending to his official duties. He had. his family with him, and was surrounded by military friends both above and below him in rank.
The idea of severing his connection with the Army was not new. He had it in contemplation just before the rebellion. He actually did resign in 1862, but his resignation was not then accepted. He was granted leave of absence instead, and subsequently placed on the retired list. In his communication to the President, July 24, 1865, a little over two months before the final resignation, he complained of his comparatively low rank in his corps, and requested promotion to the rank he would have held if he had not been retired, and adds: “ If this can not be done, then I have the honor to request that your Excellency will consider this communication a tender of my resignation, and that your Excellency will accept the same unconditionally and immediately.” At that time he was in good health, but wished to resign unless he could be promoted. He was then only forty-three years of age, and, although on the retired list, he was liable, whenever his health would permit, to be ordered to active service. He might well have considered that at his time of life, if entirely severed from the Army, he might find occupation more remunerative than Army pay, in which he would be reasonably sure of good health.
While in the service the claimant appears to have been an excellent officer; but in passing upon his legal status the court can not consider his personal merits.
The petition will be dismissed.